Lewis, Plaintiff and Respondent, vs. Leiterman and another, Defendants and Respondents: Wallenfang and another, Defendants and Appellants. [Two cases.]

*June 3—June 26, 1958.*

For the appellants there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *John C. Whitney.*

For the respondents Melvin Leiterman and Rural Mutual Casualty Insurance Company there was a brief by *Evrard, Evrard, Duffy, Holman & Faulds* of Green Bay, and oral argument by *John P. Duffy.*

For the respondents Lewis there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, for Orville Lewis, and by *Davis, Soquet & Cherney* of Green Bay, for Daroll Lewis, and oral argument by *Arthur J. Kaftan* and *Donald E. Soquet.*

BROWN, J. The collision occurred in the daytime on August 28, 1955, at the intersection of County Trunk M, an arterial highway, and Woodale avenue. The highways cross at right angles. A "Stop" sign directs drivers on Woodale to stop before entering County Trunk M. Leiterman, driving east on Woodale, did not stop for the arterial, as the jury found, and his automobile was struck on its right side by Wallenfang's car which was going north on County Trunk M. This collision caused plaintiffs' injuries.

Trial was to a jury which rendered a special verdict finding that Wallenfang was causally negligent in respect to speed and management and control, but not negligent in respect to lookout. The verdict also determined that Leiterman was causally negligent with respect to stopping at the arterial and with respect to lookout.

The jury attributed 70 per cent of the causal negligence to Leiterman and 30 per cent to Wallenfang. No question was submitted concerning contributory negligence of either plaintiff.

The plaintiffs are brothers who possess silo-filling machinery and who fill silos for farmers. They are paid

according to the capacity of the silos. Leiterman owns two silos and the plaintiffs contracted with him to fill both of them. On the day of the accident they had filled one silo and Leiterman was taking them in his automobile to look at the corn in a distant field to determine whether it was ready to be cut and put into the remaining silo. The collision occurred while they were making this trip.

The automobile carrying the plaintiffs was a 1952 two-door Ford. Besides Leiterman it contained eight passengers,—Leiterman's mother, who rode in the right front seat; Leiterman's two young sons who were in that seat also; in the right rear seat sat plaintiff Daroll Lewis; next to him, in the middle, was plaintiff Orville Lewis; Leiterman's brother-in-law, Ray Sconzert, sat in the left rear seat; and two Sconzert children were also in the rear area. One of them sat on Daroll's lap.

On the day of the accident, one driving east on Woodale avenue and approaching County Trunk M would notice a field of growing corn, standing from five to eight feet high, located in the southwest angle of the highway intersection and partially obscuring the view to the south,—the direction from which Wallenfang came.

Appellants do not contend that the jury's findings of causal negligence against Wallenfang are not supported by the evidence but they submit (1) that the accident occurred in the prosecution of a joint enterprise by Leiterman and the two plaintiffs, wherefore Leiterman's negligence, which was greater than Wallenfang's, is imputed to the plaintiffs; (2) that at least a new trial is required because the trial court erred in refusing to include a question in the special verdict in reference to plaintiffs' contributory negligence; and (3) that the special verdict should have contained a question in reference to Leiterman's negligence in failure to yield the right of way and the court should have answered

it as a matter of law that Leiterman was causally negligent in that respect.

If the plaintiffs are guilty of contributory negligence in any degree there will have to be a comparison of their negligence with that of the drivers of the respective automobiles, which will affect the recovery to which they may be entitled.

### Joint Enterprise.

Defendants submit that plaintiffs are guilty of all the causal negligence the jury charged to Leiterman, contending that at the time of the collision plaintiffs and Leiterman were engaged in a joint enterprise, wherefore the negligence of each entrepreneur is imputed to all the others.

As a general rule, a requirement of joint enterprise is an agreement among the parties to it to share profits and losses. 48 C. J. S., Joint Adventures, p. 809, sec. 2. *Tulsa County Truck & Fruit G. Asso. v. McMurphey* (1939), 185 Okla. 132, 90 Pac. (2d) 927. Another essential is the participants have joint control and the right to control the operation involved in the enterprise jointly undertaken. "Essentially there is little difference between a partnership and a joint adventure, the latter, as a rule, being more limited and confined in its scope principally to a single transaction." *Barry v. Kern* (1924), 184 Wis. 266, 268, 199 N. W. 77; *Employers Mut. Liability Ins. Co. v. Parker* (1954), 266 Wis. 179, 63 N. W. (2d) 101.

" 'A joint enterprise by two persons riding in an automobile along a public highway, the engagement in which will impute the negligence in operating the automobile of one of the persons, who is the driver, to the other person, must be a joint enterprise in controlling, directing, and governing the operation and running of the automobile, and not merely a joint interest in the objects and purposes of the trip.' " 5 Berry, Automobiles (7th ed.), p. 208, sec. 5.158.

There is no evidence of any agreement between Leiterman and the plaintiff silo fillers to share any profits or losses which might result from filling the silos. It is in evidence that the plaintiffs' compensation was a sum certain, fixed by the cubic content of the silos and unaffected by other considerations. Their profit was quite independent of any profit or benefit, as well as any loss, accruing to Leiterman from their work. As to joint control, it would be a bold assertion that the plaintiffs had a right to order Leiterman's children, his mother, his brother-in-law, and the latter's children out of Leiterman's automobile if plaintiffs thought their presence undesirable. It is too bold a one for us to make. The facts in evidence justify no such conclusion. We concur in the trial judge's conclusion that the Lewises were independent contractors, not joint adventurers with Leiterman. His negligence is not imputed to them.

Besides all that, the defense that Leiterman's negligence is imputed to the plaintiffs because the three were engaged in a joint enterprise is an affirmative defense to be pleaded and proved by the party asserting it. It was not pleaded, nor can we consider that it was proved.

## Contributory Negligence.

Appellants submit that the trial court should not have refused their request for a question in the special verdict asking the jury if the plaintiffs were guilty of contributory negligence in (1) failure to maintain a proper lookout; (2) entering an overcrowded car.

Contributory negligence of a guest is usually a question for the jury; passengers must keep a proper lookout to warn the driver of approaching danger; a passenger is not required to maintain the lookout demanded of a driver and a passenger sitting in the back seat is held to a lesser degree of care than one in front. What constitutes a proper lookout depends

on circumstances. *Vandenack v. Crosby* (1957), 275 Wis. 421, 82 N. W. (2d) 307.

Both brothers testified that they looked to the right as Leiterman approached the intersection. Daroll did not see Wallenfang's car at all. Orville saw it momentarily just before it struck. The view in that direction was substantially impaired by the cornfield. Both brothers were entitled to assume that Leiterman would perform his duty to maintain an efficient lookout and to obey the "Stop" sign before entering County Trunk M and observe traffic conditions at that point. Leiterman's failure to stop seriously reduced the plaintiffs' opportunity to look, see, or give timely warning.

*Drivers* must look with such attentiveness as to see what is in plain sight. *Lind v. Lund* (1954), 266 Wis. 232, 63 N. W. (2d) 313. But passengers, and especially back-seat passengers, have a lesser duty. Just where their lesser duty excuses them from giving timely warning of what their lesser duty requires them to see cannot be exactly stated. It depends on circumstances and is usually a jury question. But here, considering the cornfield, the failure of the driver to stop, and the rate of speed at which the cars approached the point of collision, we agree with the able and experienced trial judge that the evidence did not create a jury question and a finding of contributory causal negligence could not be permitted to stand.

Appellants' other suggestion is that respondents were guilty of contributory causal negligence because Leiterman's car was crowded when they got into it. They do not refer us to any evidence that this condition had any causal connection whatever with the occurrence of the collision.

We cannot sustain appellants' contentions that plaintiffs were causally negligent in any degree and on any theory.

*Failure to Yield Right of Way.*

Defendants made a timely request that the verdict ask the jury if Leiterman was causally negligent in failing to yield

the right of way. The trial court refused the request and submitted questions only on Leiterman's lookout and his failure to stop.

In *Plog v. Zolper* (1957), 1 Wis. (2d) 517, 527, 85 N. W. (2d) 492, decided since the instant case was tried, we said that "in situations under sec. 85.18 (4), Stats. 1955, and sec. 85.18 (9), questions as to both failure to exercise a proper lookout and failure to yield the right of way are to be submitted to the jury. The determinations with respect thereto are proper items to be considered by the jury in the comparing of the negligence of the parties."

There was conflicting evidence about Leiterman's failure to stop and a question on that subject was properly in the verdict. The jury found that he did not stop. The inclusion of that question does not make wrong or unnecessary the submission of questions on the breach of his other statutory obligation,—yielding the right of way to the driver on the arterial. If this action was between the two drivers the error would be prejudicial as affecting the comparison of negligence. But that is not the present case.

The jury found that Leiterman came into the arterial, into Wallenfang's path, without proper lookout and without stopping. Nevertheless, it determined that Wallenfang was causally negligent in speed and in management and control. The learned trial court, on motions after verdict, said that those findings had ample support in the evidence. Our study of the record brings us to the same conclusion. A finding, which could be made as a matter of law, that Leiterman failed to yield the right of way and it was causal negligence could, at most, only add another element to Leiterman's negligence. It might well affect the comparison of negligence between the two drivers. It could not possibly eliminate all causal negligence on Wallenfang's part, nor could it possibly impose any contributory negligence on the plaintiffs. We would still have a verdict of some percentage of causal negligence on the part of each driver and no contributory

negligence on the part of either plaintiff. Plaintiffs' recoveries do not depend on the proportionate negligence of the defendants, nor do those proportions, so long as there is some negligence on the part of each, affect the rights of defendants for contribution from each other. Although the omission of the right-of-way question was error it was not prejudicial.

*By the Court.*—Judgments affirmed.