EDLEBECK, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. HOOTEN (Clarence), Defendant: HOOTEN (Robert) and another, Defendants and Appellants.

*April 4—April 30, 1963.*

For the appellants there was a brief by *Lehner, Lehner & Behling* and *Adolph P. Lehner* and *Howard N. Lehner*, all of Oconto Falls, and oral argument by *Howard N. Lehner*.

For the respondents there was a brief by *Everson, Whitney, O'Melia & Everson* of Green Bay, and oral argument by *James L. Everson*.

HALLOWS, J.   Although the affidavit in support of the motion was correctly characterized as skimpy, it is sufficient for this court to consider the counteraffidavits under our decisional procedure.   *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. (2d) 238, 105 N. W. (2d) 305; *Dottai v. Altenbach* (1963), 19 Wis. (2d) 373, 120 N. W. (2d) 41.   A hunting trip for pleasure or sport and not as a commercial venture or primarily for the purpose of obtaining meat raises a legal question of joint . adventure even though there is a sharing of the game and of the expenses.   No dispute exists in the material facts. Although the plaintiffs state in their brief, ". . . it is entirely reasonable to expect that a thoroughgoing exploration during the course of a jury trial will uncover many more facts supporting existence of a joint adventure," this expectation is not sufficient to defeat summary judgment especially where such facts as a matter of law cannot constitute a joint adventure.

The terms "joint adventure" and "joint enterprise" have been used interchangeably by this and other courts.   The terms are often used to describe a special business arrangement of less dignity but partaking of some essentials of a partnership and governed by the laws applicable thereto and sometimes to describe or characterize the relationship of a driver of an automobile and his passengers to determine the imputation of negligence.   In *Barry v. Kern* (1924), 184 Wis. 266, 268, 199 N. W. 77, we pointed out, "Essentially there is little difference between a partnership and a joint adventure, the latter, as a rule, being more limited and confined in its scope principally to a single transaction." See also *Reinig v. Nelson* (1929), 199 Wis. 482, 227 N. W. 14; *Employers Mut. Liability Ins. Co. v. Parker* (1954), 266 Wis. 179, 63 N. W. (2d) 101.

Joint adventures are of modern origin, creatures of American courts, not recognized at early common law apart

from partnerships, but now considered to be a status created by persons combining their properties or services in the conduct of an enterprise without forming a formal partnership. 30 Am. Jur., Joint Adventures, p. 938, sec. 1. At least as between the parties the association must be with intent to engage in a single business adventure for joint profit for which purpose the participants combine their efforts, property, skill, or knowledge. Each must agree expressly or impliedly to a community of interest as to the purpose of the undertaking and to stand in the relation of agent as well as principal to the other coadventurers with equal right of control of the means employed to carry out the common purpose. 30 Am. Jur., Joint Adventures, p. 939, sec. 2; Annos. 48 A. L. R. 1055, 63 A. L. R. 909, 138 A. L. R. 968.

Four requisites have generally been recognized by the courts to be essential to the existence of a joint adventure: (1) Contribution of money or services but not necessarily in equal proportion by each of the parties, (2) joint proprietorship and mutual control over the subject matter of the venture, (3) an agreement to share profits though not necessarily the losses, and (4) a contract express or implied establishing the relationship. *Tate v. Ballard* (1954), 243 Minn. 353, 68 N. W. (2d) 261; *Rehnberg v. Minnesota Homes, Inc.* (1952), 236 Minn. 230, 52 N. W. (2d) 454; *Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co.* (10th Cir. 1954), 209 Fed. (2d) 917. See also 48 C. J. S., Joint Adventures, p. 809, sec. 2. In *Lewis v. Leiterman* (1958), 4 Wis. (2d) 592, 91 N. W. (2d) 89, and *Bowers v. Treuthardt* (1958), 5 Wis. (2d) 271, 92 N. W. (2d) 878, we pointed out two of these elements of joint enterprise, namely, an agreement among the parties to share profits and losses and the joint right of equal

control of the operation involved in the enterprise jointly undertaken. Whether the third element must include a sharing of losses as well as profits as stated in the last two cases is not hereby decided.

A distinction may be made between cases involving the use of an automobile in the carrying on of a joint adventure from cases in which the use of the automobile is of itself the joint enterprise. In the former cases the use is incidental to or only a part of the carrying out of the purpose of the joint adventure while in the latter cases it is of the essence. The importance of the existence of a joint enterprise is, in this case, to impute the negligence of the driver Clarence Hooten to the defendant Robert Hooten, a passenger, by the application of the rules governing partnership since the automobile was used in carrying out the hunting venture. In theory at least, if such a joint adventure exists it should not make any difference for the purpose of imputation of negligence whether a participant in the joint adventure was a passenger in the car or not if the operation of the auto at the time of the accident was within the scope and in furtherance of the purpose of the joint adventure. If in this case the predominant purpose was not hunting for pleasure but commercial hunting for meat and profit, we might have a joint adventure which would be the basis for the imputation of negligence.

A venture to constitute a joint adventure must be for profit in a financial or commercial sense. In *Brubaker v. Iowa County* (1921), 174 Wis. 574, 183 N. W. 690, we intimated there must be a joint financial interest in the undertaking which relationship is not to be presumed from a marital relationship. In that case we held a husband and wife were not joint adventurers in traveling together in an auto from Wisconsin to Iowa to make their home and to seek separate positions, stating (p. 579) :

"In one sense husbands and wives in their journey through life are always engaged in joint enterprises, sometimes successful, sometimes disastrous."

It may be that in a romantic sense marriage is a joint adventure, but not in a legal sense. Unless other facts exist, a joint adventure will not be grounded upon the marital relationship. In *Krause v. Hall* (1928), 195 Wis. 565, 571, 217 N. W. 290, we stated:

"The relation of joint adventurers is generally contractual in its nature. We have been referred to no case in which it has been held to grow out of social relations."

In *Sommerfield v. Flury* (1929), 198 Wis. 163, 166, 223 N. W. 408, where members of a threshing crew rode in an automobile for the purpose of going to a farm fire to render assistance, we stated:

"The ordinary conception of a joint undertaking is that it grows out of a financial or business enterprise, and springs from contract. It is much like a partnership, the principal difference being that a joint undertaking is confined to a single enterprise rather than to a continuous business relation. Our attention has been called to a few scattering cases where courts have considered relations purely social in their nature as giving rise to a joint undertaking. We believe such conclusions were reached without giving due consideration to the true character of a joint enterprise, as the same is known in the law. We have said in *Krause v. Hall,* 195 Wis. 565, 217 N. W. 290, that the relations of joint adventurers do not arise out of social relations. We are still of that opinion."

In *Van Gilder v. Gugel* (1936), 220 Wis. 612, 265 N. W. 706, we held that where two persons were returning home in an automobile after assisting each other in woodcutting on their respective woodlots no joint adventure existed, pointing out that the journey was not part of any business

or enterprise in which they were jointly or mutually interested financially although each had a similar purpose in making the trip. As late as *Schweidler v. Caruso* (1955), 269 Wis. 438, 69 N. W. (2d) 611, upon a reconsideration of the principle announced in *Sommerfield* we stated there was no compelling reason for changing the rule that a joint adventure must grow out of a financial or business enterprise and spring from contract.

There is a line of cases based on joint ownership of an automobile which could be argued as authority for holding that a joint adventure does apply to social as well as commercial relationships. This line of authority is best illustrated by the following cases: *Archer v. Chicago, M., St. P. & P. R. Co.* (1934), 215 Wis. 509, 255 N. W. 67 (a husband and wife returning from a visit to their daughter); *Paine v. Chicago & N. W. R. Co.* (1935), 217 Wis. 601, 258 N. W. 846 (a husband and wife returning home from a card party); *Emerich v. Bigsby* (1939), 231 Wis. 473, 286 N. W. 51 (mother and daughter returning home from visiting relatives); and *Johnsen v. Pierce* (1952), 262 Wis. 367, 55 N. W. (2d) 394 (mother and son traveling from Superior to Biloxi to meet another son). In referring to the first three cases, we stated in *Johnsen,* at page 370:

"In each case we held that the two owners were engaged in a joint adventure and that a mutual agency existed between them whereby the negligence of the driver was imputed to the passenger. We consider that these cases, so similar to the instant one on this proposition, are controlling."

The use of the term "joint adventure" was incorrect to characterize the imputation of negligence of the driver of the auto to the passenger which in fact rested upon the joint ownership of the car and joint use thereof for a common purpose and is withdrawn. In such cases a joint control or

a right to equal control of the automobile exists giving rise to a mutual agency. 5A Am. Jur., Automobiles and Highway Traffic, p. 767, sec. 826. See also Restatement, 2 Torts, p. 1277, sec. 491, Joint Enterprise, comment *f*. Essentially such cases are governed by the principles of agency as are cases of an owner allowing another to drive his car for his benefit or their common benefit. In the non-joint-ownership cases, ownership of a car by a passenger raises a rebuttable presumption of the agency of the driver. *Strupp v. Farmers Mut. Automobile Ins. Co.* (1961), 14 Wis. (2d) 158, 109 N. W. (2d) 660; *Edwards v. Gross* (1958), 4 Wis. (2d) 90, 90 N. W. (2d) 142. These cases of joint ownership and of agency are not applicable to the facts of this case, nor do they require a business basis for the imputation of negligence.

Human nature being what it is, it is probably true the cases involving the relationship of driver and the passenger where there is joint ownership or joint purpose will be referred to as joint enterprises or joint adventures used in a popular sense. If so, these cases should not be confused with those involving the legal concept of joint enterprise as used in this opinion. The Restatement, 2 Torts, p. 1277, sec. 491, Joint Enterprise, comment *g*, Sharing Expenses of Trip, is urged upon us for the proposition that a particular motor trip may constitute a joint enterprise if the trip is for a common but nonbusiness purpose. From what has been said, it should be clear we do not agree and the concept of joint adventure or enterprise should be confined to business enterprises for the purpose of imputation of negligence based upon the relationship of the parties.

*By the Court.*—Order reversed, with direction to grant the motion for summary judgment.